# United States Court of Appeals
## For the First Circuit

No. 11-1069

UNITED STATES,

Appellee,

v.

DIANNE WILKERSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Thompson, Circuit Judges.

Judith H. Mizner, Assistant Federal Public Defender, on brief for appellant.
Kelly Begg Lawrence, Assistant U.S. Attorney, and Carmen M. Ortiz, United States Attorney, on brief for appellee.

April 5, 2012

**Per Curiam**.  Defendant-appellant Dianne Wilkerson, a former state senator in Massachusetts, pleaded guilty to federal charges of attempted extortion (18 U.S.C. § 1951) based on her acceptance of money offered in exchange for her favorable influence in her official capacity.  Her crime involved two separate matters: the issuance of a liquor license for a new club, and the sale and development of a parcel of publicly-owned land.  After she pleaded guilty, the district court received a lengthy presentence report, and conducted a thorough sentencing hearing.  Before imposing sentence, the district court stated its reasons in some detail.  It imposed a prison term of forty-two months, which was near the middle of the applicable range under the United States Sentencing Guidelines.

The defense takes issue with three separate conclusions that it attributes to the district court, based on the court's statement of reasons in support of the sentence imposed.  First, in relation to a prior conviction for failure to file tax returns, Wilkerson released a public statement in which she said "[f]or public officials, there should be a higher expectation about how we conduct even our personal affairs. This is a personal tax matter." The district court stated its own view that "[a] tax violation by a public official is not a personal matter."  The defense construes the district court's statement as a rebuke and an accusation that Wilkerson did not accept full responsibility for her prior crime.

The context in which the district court made the statement makes this interpretation unlikely. The court explained that it did "not want to twist people's words around and turn them on them" but did "want to make a larger point." It then posited that Wilkerson had fallen into neglect of her own legal responsibilities by following an unbalanced and over-committed approach in her public service. The court's comment is most plausibly interpreted as a segue to make a "larger point," and a fair one, about the public implications of an over-engaged official's failure to attend to his or her own legal responsibilities.

The defense also takes issue with the district court's comment, concerning Wilkerson's prior state civil campaign-finance violations, that she "was simply inattentive and inattentive in a way that permitted her to have access to money that she should not have had." The defense construes this comment as accusing Wilkerson of putting disputed funds to personal use. This is too strong of an imputation. However technical Wilkerson's violations might have been, and however little money was diverted to personal use, campaign-finance violations involve a recipient's impropriety in connection with received funds. The district court's colloquial phrasing about "access to money she should not have had" is a fair comment on the implications of non-compliance with campaign-finance requirements.

Finally the defense disputes the district court's conclusion

that Wilkerson's engagement as a college "consultant" was one of "a series of very embarrassing things" she did in response to her financial troubles.  The defense makes the point that it is not improper for a legislator to teach or lecture at a college.  This is a fair point in the abstract, but the district court's comment was specific to the circumstances of Wilkerson's arrangement.  In response to overtures from a donor who was supportive of Wilkerson and mindful of her financial troubles, the college leadership decided to offer Wilkerson fifteen thousand dollars for an engagement of six months.  Her work largely consisted of arranging three lectures, to be given by other speakers, on topics of public concern.  Measuring the 'proportionality' of compensation is not an exact science, but Wilkerson's arrangement with the college certainly would have been remunerative, and the main impetus behind it appears to have been the influence brought to bear by her supporter.  The district court's skeptical appraisal of Wilkerson's arrangement with the college was within the bounds of reasonableness.

The judgment of the district court is **<u>affirmed</u>**.